**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**SECURITIES & EXCHANGE COMMISSION,**

        **Plaintiff,**

**-vs-**                        **Case No. 6:09-cv-102-Orl-28KRS**

**BARRIERMED, INC., BARRIERMED GLOVE, CO., VICTOR J. RAGUCCI,**

        **Defendants.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** **PLAINTIFF'S RENEWED MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS BARRIERMED, INC. AND BARRIERMED GLOVE CO. (Doc. No. 42)**
>
> **FILED:** August 4, 2010

Plaintiff Securities and Exchange Commission (SEC) filed a complaint in this case against Defendants BarrierMed, Inc., BarrierMed Glove Co. and Victor Ragucci alleging violation of the Securities Act of 1933 (Securities Act) and the Securities Exchange Act of 1934 (Exchange Act). The SEC served the complaint on Defendants BarrierMed, Inc. and BarrierMed Glove Co. by personally serving a corporate officer. Doc. Nos. 24, 25, 37. The SEC also served Defendant Ragucci. Defendant Ragucci appeared through counsel and responded to the complaint. The corporate

defendants failed to appear and respond to the complaint, however. Accordingly, the Clerk of Court entered defaults against BarrierMed, Inc. and BarrierMed Glove Co. (sometimes collectively referred to herein as the companies). Doc. No. 28.

The SEC and Ragusi entered into an agreement for entry of a consent judgment. Doc. No. 39. The agreement was approved, and the Court entered a permanent injunction. Doc. No. 40.

SEC now seeks entry of default judgments against BarrierMed, Inc. and BarrierMed Glove Co. BarrierMed, Inc. and BarrierMed Glove Co. have not responded to the motion, and the time for doing so has passed. Accordingly, the matter is ripe for resolution.

## II.     APPLICABLE LAW.

A court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for such entry. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."). Thus, "[a] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal quotations omitted).

"Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999). If a default judgment is warranted, the court may hold a hearing for the purposes of assessing damages. Fed. R. Civ. P. 55(b)(2); *see also SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005). However, a hearing is not necessary if a party submits sufficient evidence to support the request for damages. *Id.*

**III.     ALLEGATIONS OF THE COMPLAINT.**

The SEC alleged in its complaint that BarrierMed, Inc., BarrierMed Glove Co. and Ragucci sold unregistered securities through a series of private offerings. Doc. No. 1 ¶¶ 1-2. BarrierMed, Inc., BarrierMed Glove Co. and Ragucci misled investors about the companies' operating results, revenues, future profits, the nature and impact of certain contracts, the viability of the products and production capabilities, the ability to conduct an initial public offering, Ragucci's background and credentials, and the amount of Ragucci's salary. *Id*. ¶¶ 4, 20-47. The SEC alleges that these actions constituted fraud in violation of Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a), 77e(c) and 77q(a); and Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5. *Id*. ¶¶ 6, 48-60. The SEC requests a permanent injunction, *id*. at 14-15, and has voluntarily dismissed its claims for disgorgement and civil monetary penalties against BarrierMed, Inc. and BarrierMed Glove Co. Doc. Nos. 41, 42 at 5.

**IV.     ANALYSIS.**

   *A.     Liability.*

      1.     <u>Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5.</u>

Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, all proscribe fraudulent conduct in the offer or sale of securities. Section 17(a) of the Securities Act provides that:

> It shall be unlawful for any person in the offer or sale of any securities . . . by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly

> (1) to employ any device, scheme, or artifice to defraud, or
>
> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
>
> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a). Section 10(b) makes it unlawful for any person to use or employ, in connection with the purchase or sale of any security, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the SEC may prescribe. *SEC v. Zandford*, 535 U.S. 813, 819 (2002). Rule 10b-5 implements this provision and forbids the use of "any device, scheme, or artifice to defraud" or any other act that operates as a fraud or deceit. 17 C.F.R. § 240.10b-5. Rule 10b-5 also proscribes the making of any "untrue statement of material fact" or the omission of any material fact "necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." *Id*.

"To have violated Section 10(b) and Rule 10b-5, [Defendants] must have: (1) made a material representation or a material omission as to which [they] had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities." *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999); *accord SEC v. Wall Street Commc'ns, Inc.,* No. 8:09-cv-1046-T-30TGW, 2009 WL 2579310, at *3 (M.D. Fla. Aug. 19, 2009). A claim under Section 17(a) of the Securities Act requires essentially the same elements as a claim under Section 10(b) and Rule 10b-5 "except that there is no scienter requirement" for a claim under Section 17(a). *Wall Street,* 2009 WL 2579310, at *3.

The complaint alleges that BarrierMed, Inc. and BarrierMed Glove Co. made false statements in telephone calls and private placement materials regarding their sales figures and growth, revenues and profits, manufacturing capacity and operational status, the nature and value of contracts, their ability to launch and sell their product, their readiness to conduct and initial public offering, and Ragucci's credentials and compensation. Doc. No. 1 ¶¶ 4, 20-47. As specific examples, a private placement memorandum indicated that sales were growing when they were actually declining. *Id*. ¶¶ 22-23. An e-mail indicated that sales were $103,000.00 one month and $55,000.00 another month when the sales amounts were actually $28,572.00 and $16,612.00, respectively. *Id*. ¶¶ 24-25. A pro forma financial statement claimed $1.2 million in revenues for 2004 when the correct revenue amount was $174,585.00. *Id*. ¶¶ 30-31. A private placement memorandum also claimed that Ragucci had a Bachelor's degree in business administration from Northeastern University and a Master's degree in business administration from Bentley College when Ragucci only obtained an Associate's degree from Northeastern University and did not have a master's degree. *Id*. ¶¶ 43-44. Thus, SEC has sufficiently alleged the falsity of the representations.

To determine whether these false statements were material, the Court considers whether there is a substantial likelihood that a reasonable investor would consider the omitted facts or misrepresentations important in deciding whether to invest. *Currie v. Cayman Res. Corp*., 835 F.2d 780, 783 (11th Cir. 1988) (citing *TSC Indus. Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)). The misrepresentations described in the complaint included that the companies had not come close to generating the profits and revenues claimed, that the companies' factories were dormant, that the companies had not taken any steps toward conducting a claimed impending initial public offering, and that Ragucci did not have the academic credentials claimed and was paid much more than was

disclosed. Doc. No. 1 ¶¶ 22-29, 37-47. There is a substantial likelihood that these misrepresentations would significantly influence whether an investor chose to invest money with these companies. Therefore, these misrepresentations are material.

The SEC must also show that the acts were done with scienter, an "intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976). "Scienter may be established by a showing of knowing misconduct or severe recklessness." *SEC v. Carriba Air, Inc.*, 681 F.2d 1318, 1324 (11th Cir. 1982). Recklessness requires a showing that the companies' conduct was an extreme departure from standards of ordinary care which presented a danger of misleading buyers or sellers that either was known to the companies or was so obvious that the companies must have been aware of it. *Id.* (citing *SEC v. Southwest Coal and Energy Co.*, 624 F.2d 1312, 1321 (5th Cir. 1980)). At a minimum, the companies acted with severe recklessness by misrepresenting hard numbers like sales, revenues, and profits that were not true or attainable, as well as the credentials and salary of Ragucci, which were easily verifiable. In addition, they acted with severe recklessness by representing that they were on the verge of an initial public offering when they could not produce or sell their product. Thus, the SEC has properly alleged that the companies acted with scienter.

To determine whether these actions occurred "in connection with" the purchase or sale of securities, the SEC need only show "a fraudulent scheme in which the securities transactions and breaches of fiduciary duty coincide." *SEC v. Zandford,* 535 U.S. at 825; *accord Jacobini v. KPMG LLP,* 314 F. Supp. 2d 1172, 1179 (M.D. Fla. 2004). This standard is to be interpreted flexibly to effect the purposes of the protective statute. *Zandford,* 535 U.S. at 819. Here, the companies solicited and raised more than $11 million from hundreds of investors by selling unregistered securities through a series of private offerings. Doc. No. 1 ¶¶ 2, 16-17. These offerings included the sale of common stock

in both companies and the issuance of loans or promissory notes that included a purchase or gift of common stock as part of their terms. At the end of the loan period, the companies commonly asked investors to convert their principal into additional common shares in the companies. *Id.* ¶ 18. Thus, the SEC has established that the companies acted "in connection with" the purchase or sale of securities. SEC has established violations of Section 17(a) of the Securities Act and Section 10(b) and Rule 10b-5 of the Exchange Act, and is entitled to a default judgment against BarrierMed, Inc. and BarrierMed Glove Co. for these violations.

        2.        Section 5 of the Securities Act.

Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c), prohibit selling or offering to sell securities without filing an effective registration statement with SEC or qualifying for an exemption from the registration requirement. "To establish a prima facie case of violation of section 5, a plaintiff need allege only the sale or offer to sell securities, the absence of a registration statement covering the securities, and the use of the mails or facilities of interstate commerce in connection with the sale or offer." *Raiford v. Buslease, Inc*., 825 F.2d 351, 354 (11th Cir. 1987) (citing *Swenson v. Engelstad*, 626 F.2d 421, 424-25 (5th Cir. 1980)). SEC alleged in their complaint the sale of securities, Doc. No. 1 ¶¶ 1-2, 4, 15-18, the absence of a registration statement filed with SEC and the failure to qualify for any exemption, *Id.* ¶ 50, and the use of the mails or facilities of interstate commerce. *Id.* ¶¶ 13, 16-17, 19, 22, 28, 30, 32, 35, 37, 39, 49, 53, 56, 59. Accordingly, SEC has established that the companies violated Sections 5(a) and 5(c) of the Securities Act.

*B. Injunctive Relief.*

The SEC requests injunctive relief barring the companies from future violations of the Securities Act and the Exchange Act. "The SEC is entitled to injunctive relief when it establishes (1)

a prima facie case of previous violations of federal securities laws, and (2) a reasonable likelihood that the wrong will be repeated." *SEC v. Calvo*, 378 F.3d 1211, 1216 (11th Cir. 2004) (per curiam). As discussed above, the SEC has established a prima facie case of violation of the alleged securities laws. To determine if the companies are likely to repeat their wrongful actions, the Court considers several factors, including the egregiousness of the defendants' actions, the isolated or recurrent nature of the violations, the degree of scienter involved, the sincerity of the defendants' assurances against future violations, the defendants' recognition of the wrongful nature of their conduct, and the likelihood that the defendants' occupation will present opportunities for future violations. *Carriba Air*, 681 F.2d at 1322. Here, these factors all weigh in favor of granting injunctive relief.

The companies' actions as alleged in the complaint are highly egregious and were completed with a high degree of scienter as the companies took $11 million from investors through artifice and fraud when the companies had information which showed that their marketing materials were blatantly false. Their actions were recurrent, and continued from at least 2003 through February 2007. Doc. No. 1 ¶ 2. The companies failed to appear or respond to the complaint, which weighs against them in the remainder of the factors, as they have made no assurances regarding their future conduct, have not recognized the wrongful nature of their conduct, and have failed to take responsibility for or defend their actions. Accordingly, injunctive relief is warranted.

The SEC attached to its motion for default judgment a proposed order which contains an "obey the law" injunction and prohibits the companies from violating the securities laws they are alleged to have violated in the complaint. Doc. No. 29-2. Generally, injunctions which require defendants to only obey the law do not meet the specificity requirements of Federal Rule of Civil Procedure 65(d). *Burton v. City of Belle Glade*, 178 F.3d 1175, 1200-01 (11th Cir. 1999) (court cannot enforce an injunction

which requires no more than that a defendant obey the law).  However, Congress specifically authorized the issuance of an injunction to prohibit the violation of securities laws. 15 U.S.C. § 77t ("Whenever it shall appear to the Commission that any person is engaged in or about to engage in acts of practices which constitute or will constitute a violation of the provisions of this subchapter . . . the Commission may, in its discretion, bring an action . . . to enjoin such acts or practices.").  The United States Court of Appeals for the Eleventh Circuit has determined that this statutory authority overrides the usual prohibition against enjoining a party to obey the law. *Carriba Air*, 681 F.2d at 1321; *see also SEC v. Ginsburg*, 362 F.3d 1292, 1305 (11th Cir. 2004) (finding clear error where district court did not enjoin defendant "to refrain from violating the securities laws in the future.").  After these decisions, the Eleventh Circuit did state in dicta, in a footnote, that "obey the law" injunctions in a securities case were unenforceable. *Smyth*, 420 F.3d at 1233 n.14.

Because the Court has previously approved the injunctive language under each count which is proposed by the SEC, Doc. No. 40, I recommend that the Court enter the proposed order attached to the motion.  Doc. No. 42-1.

**V.  RECOMMENDATION.**

For the foregoing reasons, I respectfully recommend that the motion for default judgment against BarrierMed, Inc. and BarrierMed Glove Co., Doc. No. 42, be **GRANTED** and that the Court:

1. **GRANT** the motion for default judgment and enter the injunctive relief requested by SEC at Doc. No. 42-1;

2. **DISMISS** the claims against BarrierMed, Inc. and BarrierMed Glove Co. for disgorgement and civil penalties; and

2. **DIRECT** the Clerk of Court to close the file after judgment is entered.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on September 27, 2010.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy